## Thomas J. Lobdell *vs.* Eliphalet Baker.

A declaration, which alleges that the defendant, with a design to deceive, defraud and injure all persons who might purchase a certain promissory note, procured a minor to indorse the same, and then sold the note to one who relied on the indorsement as valid, may be amended by adding a count, in which the averment of the defendant's fraudulent intent in procuring the indorsement is omitted, and an allegation introduced, that the defendant, after procuring that indorsement, sold the note as and for a note on which the indorsement was that of a person of full age, effectual and incapable of being avoided.

The selling of a promissory note by one who has caused it to be indorsed by a minor, without erasing the indorsement or otherwise making it appear on the note that the indorsement is not to be relied on, is, if unexplained, a representation to all subsequent holders that the indorsement constitutes a valid contract : And though the seller gives notice to the first purchaser that the indorsement is worthless, yet if such purchaser sells the note without disclosing the infirmity of the indorsement, his vendee, if he suffer therefrom, may maintain an action for indemnity against the first seller.

THE new trial, which was granted in this case, (1 Met. 193) was had at the November term 1840. The original declaration alleged that the defendant was possessed of a promissory note, indorsed in blank by the payee ; that the defendant, with a design to deceive, defraud and injure all persons who might purchase said note, and to cause them to believe that it was indorsed, in addition to the indorsement of the payee, by another person whose indorsement was valid and could not be avoided, procured James Swan, Jr. a minor who was in the defendant's employ, and known to him to be a minor, to indorse the same in blank, and afterwards, by his agent, B. Winslow, a broker, offered to sell said note to one Stearns, who, relying on said last indorsement as valid, &c. purchased the note ; that the plaintiff, afterwards, relying on said last indorsement as effectual and not avoidable, and in consideration thereof, purchased the note of said Stearns ; that the makers and payee of the note having failed, and not having paid the note, the plaintiff commenced an action against Swan as indorser, who pleaded and proved his infancy, obtained a verdict, and recovered a judgment against the plaintiff for costs.

*Wilde,* J before whom the case was tried, granted leave to the plaintiff, (the defendant objecting,) to file a new count, in

which the averment, in the first count, of the defendant's fraudulent intent in procuring Swan's indorsement, was omitted, and an allegation introduced, that the defendant, after procuring that indorsement, offered, through his agent, B. Winslow, a broker, to sell the note to Stearns, as and for a note on which the indorsement of Swan was that of a person of full age, effectual, and incapable of being avoided ; that Stearns, relying on that indorsement, as being thus effectual, &c. purchased the note ; and that afterwards the plaintiff, with the same reliance, purchased it of Stearns.

There was conflicting testimony, at the trial, on the questions, whether the defendant informed Winslow, before the sale of the note, that Swan's indorsement was worthless, and ·whether Stearns was ·deceived by relying at all on that indorsement. Upon the whole evidence in the case, the judge instructed the jury, that " although they should be of opinion that the defendant procured the indorsement without any actual intention to deceive, yet if he, after having had time for reflection, put the note into circulation, without erasing Swan's name, or noting on the note that he was not liable ; that would be deemed fraudulent in law, and would render the defendant liable to any one deceived and defrauded thereby, by purchasing the note, giving any credit to Swan's indorsement : That if the plaintiff was deceived by means of the defendant's conduct, it was immaterial whether Stearns was deceived or not : And if the jury should be of opinion, from the evidence, that the plaintiff was so deceived, he would be entitled to maintain this action."

The jury found for the plaintiff, and the defendant moved for a new trial for misdirection of the judge.

Written arguments were presented to the court before the commencement of the term.

*Choate & D. A. Simmons*, for the defendant.

*C. G. Loring & Bartlett*, for the plaintiff.

SHAW, C. J. It appears to the court that little more remains, in the decision of this case, than to reaffirm the principles adopted in the former decision of the case, previous to the last trial. 1 Met. 193. The declaration has been amended,

so as to charge that the defendant, knowing that Swan was an infant, put into circulation a note with the name of Swan as indorser, &c. and that the plaintiff, relying on Swan's name, as indorser, purchased the note. This we think is introducing no new cause of action, but stating the same cause of action somewhat more accurately, and that it was properly allowed as an amendment.

The ground upon which the court decide, being substantially the same as before stated in the same case, is this : The de fendant, having the note indorsed in blank, for sale, as appears by his afterwards in fact selling the same, caused a minor and clerk in his employment to put his name upon it in blank, as indorser. Every man is presumed to intend all the necessary, natural and probable consequences of his own acts, conduct and language. The ordinary purpose, for which a person indorses a note not due, is to give it currency. He is held out as one who has been the holder and proprietor of the note, and indorses it for the double purpose of transferring title to another, and giving the conditional undertaking, which an indorsement implies, to pay it if dishonored by the promisor. This is the implied representation of an accommodation indorser, and he cannot show that he did not intend to be bound. His contract is inferred from his act. When therefore a man, for a valuable consideration, puts into circulation a note, bearing the name of a blank indorser, with nothing to rebut the natural inference to be drawn from it, he by necessary implication affirms that the indorser is a person capable of indorsing, and binding himself by such indorsement. Such inference may be repelled by matter accompanying ; as if a note were given by a husband payable to his wife or her order, and she should indorse as wife ; any body taking the note would see that the indorsement was made by a feme covert, who as attorney could pass the note, but, as a feme covert, could not bind herself. But, unexplained, such a person is represented to be one capable of being an indorser with the usual consequences.

There is a manifest difference in such case, between a minor, one not bound by a contract, and a person who, though his

pecuniary responsibility is not such as adds much strength to the security, does yet bind himself. Whoever takes a negotiable security is understood to ascertain for himself the ability of the contracting parties ; but he has a right to believe, without inquiring, that he has the legal obligation of the contracting parties appearing on the bill or note. Unexplained, the purchaser of such a note has a right to believe, upon the faith of the security itself, that it is indorsed by one capable of binding himself by the contract which an indorsement by law imports. It is an averment to that effect, on the part of him who procures such an indorsement and puts the note bearing it into circulation.

In the present case, the defendant procured such an indorsement on the note, and put it into circulation, unexplained. He thereby affirmed to any one who should take it, that it was so indorsed. He knew it was not so indorsed. If he supposed it immaterial, and believed the note good without it, he might not be actuated by any motive of gain to himself, or any actual intent to injure another. Still the fact remains, that he has made a representation, which to his knowledge is untrue. Then the principle applies, that if one makes a representation which is not true, and another, acting upon the faith of its being true, is injured by it, he has his remedy against the party so making the false representation. *Polhill* v. *Walter*, 3 Barn. & Adolph. 114. He may not be liable for vindictive or exemplary damages, as in case of fraud in fact; but it is a fraud in law, by which another suffers, and for which the party suffering has a right to look to him for indemnity. We think this was the rule laid down before, and it governs the present case.

Another point that has been strongly pressed in the argument is this : That if the defendant, when he delivered the note to Winslow, the broker, to be negotiated, told him that the name of Swan added nothing to the validity of the security, and that no one should rely upon it ; or if, in the sale by Winslow to Stearns, the same caution was given to the latter ; the defendant had done his duty, and was no farther responsible for the consequences. There was contradictory evidence as to the

fact. But supposing it to be fully proved that such caution was given, we think it would not relieve the defendant from his responsibility to the plaintiff. Persons successively taking a negotiable note, during the time it has to run, and without actual notice of what has previously taken place, are not affected by any knowledge in regard to the note, which prior holders may have had. Each takes with notice only of what is apparent upon it — in the absence of actual notice to himself. This principle is essential to the security and free currency of negotiable instruments. It follows, therefore, that a representation, borne upon the instrument itself, is a representation to each successive holder, when about to take it in the due course of business, without actual notice. This is fully established in the case already cited. A person, not authorized to accept a bill of exchange for another, did accept it by procuration. This was held to be a representation that he was authorized so to accept, made to each one who should take the acceptance; and being a false representation, the ultimate holder had his remedy in this form of action, although a prior holder, who held it at the time of the acceptance, and procured the acceptance, was informed by the defendant that he had no authority to accept. *Polhill* v *Walter*, 3 Barn. & Adolph. 114.

*Judgment on the verdict.*